1    STEPHEN R. KAHN  [SBN 55789]
     LAW OFFICES OF STEPHEN R. KAHN
2    433 North Camden Drive, Suite 970
     Beverly Hills, CA. 90210
3    Telephone: 310-246-9227
     Email: srklaw7@aol.com
4
     Attorney for Defendant
5    GAYLE SIMPSON

6

7                IN THE UNITED STATES COURT

8          FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10

11    UNITED STATES OF AMERICA      )    CASE No. 2:17-CR-00567-1
                                  )
12             Plaintiff ,         )    **DEFENDANT'S POSITION**
                                  )    **RE: SENTENCING**
13                                   )
     GAYLE SIMPSON,               )
14                                   )
                                  )
15             Defendants.       )
16                                   )
                                  )    Date:           March 5, 2018
17                                   )    Judge:         The Honorable
                                  )                     Manuel L. Real
18                                   )    Time:          10:00 a.m.
                                  )
19                                   )
                                  )
20    _____ )

21

22          <u>DEFENDANT'S SENTENCING MEMORANDUM</u>

23         Defendant GAYLE SIMPSON by and through his attorney of record,

24    STEPHEN R. KAHN, and pursuant to  18 U.S.C. §3553 et seq., hereby submits

25    his position on sentencing pursuant to Rule 32 of the Rules of Criminal Procedure,

26    setting forth the factors that the Court should consider in determining what type

27    and length of sentence is sufficient, but not greater than necessary, to comply with

28

the statutory directives set forth in 18 U.S.C. §3553(a).

This position is based upon the following memorandum, the presentence report, the exhibits, the documents and records on file in this matter, and any argument or evidence presented at the hearing on this matter or which the Court may wish to consider.

DATED:     02/14/18           RESPECTFULLY SUBMITTED,


/s/ _____
STEPHEN R. KAHN
ATTORNEY FOR DEFENDANT
GAYLE SIMPSON

# **MEMORANDUM**

## I.   Introduction

_____On September 27, 2017 Defendant GAYLE SIMPSON, age 33, pled guilty to a single-count Information.

The Information alleges that on April 12, 2017, Simpson violated 18 U.S.C. §§ 545, 2(b) by unlawfully importing into the United States three Spiny necked water monitor lizards, one Samar water monitor lizard, and one Palawan water monitor lizard. **(PSR, #2, Page 4)**

On August 14, 2017, GAYLE SIMPSON was arrested and released $25,000 appearance bond without pretrial supervision.

SIMPSON has had no violations pending resolution of this matter. This is Mr. Simpson first encounter with the criminal justice system. He is a true first offender who is not a threat to the community and who has little, if any, risk of recidivism.   Mr. Simpson has freely admitted his guilt and he accepts complete responsibility for this shameful criminal episode which, by all accounts, appears to be an anomaly in an otherwise responsible and productive life.

Based on the factors set forth below, it is submitted that a sentence of probation with home confinement is sufficient to reflect the seriousness of the offense, to deter future crimes, to promote respect for the law, to protect the public and to provide just punishment for the offense.  18 U.S.C.§3553(a)(2)(A-D).

## II.   Procedural Background

On September 27, 2017, the defendant, **GAYLE SIMPSON**, pled guilty to single county. The Information alleges that on April 12, 2017, Simpson violated 18 U.S.C. §§ 545, 2(b) by unlawfully importing into the United States three Spiny necked water monitor lizards, one Samar water monitor lizard, and one Palawan water monitor lizard. **(PSR, #2, Page 4)**

Pursuant to a written plea agreement, the parties agree that the Sentencing Guidelines should be applied as follows:

Base Offense Level: 6  USSG §2Q2.1(a)

Specific Offense Characteristic

[Pecuniary Gain/Commercial Purpose] +2 USSG §2Q2.1(b)(1) **(PSR, #3, Page 4)**

The government conditionally agrees to recommend up to a three-level reduction for acceptance of responsibility, and a sentence at the low end of the applicable guideline

range. **(PSR, #6, Page 4)**

The parties agree to a limited mutual waiver of appeal. **(PSR, #7, Page 4)**

On October 12, 2017 GAYLE SIMPSON was interviewed by the USPO in the presence of defense counsel for purposes of preparing the presentence report. The Probation Officer calculated Mr. SIMPSON  base offense level as 6.**(PSR, #20, Page 6)**¶ )  The total offense level was found to be 12.

Pursuant to USSG §2Q2.1(b)(1)(A), a two-level enhancement is recommended because the offense was committed for pecuniary gain or otherwise involved a commercial purpose. **(PSR, #21, Page 6)**¶

Specific Offense Characteristics: If the market value of the wildlife exceeded $6,500, USSG §2Q2.1(b)(3)(A)(ii) calls for the base offense level to be increased by the number of levels from the table in §2B1.1 corresponding to that amount.

Under relevant conduct, Simpson is accountable for the aggregate market value for all of the lizards that were unlawfully imported (i.e., those lizards imported on April 8, 2016, April 20, 2016, June 2, 2016, July 13, 2016, November 16, 2016, December 14, 2016, and April 12, 2017). The aggregate market value was $40,200, so a six-level enhancement is warranted pursuant to USSG §2B1.1(b)(1)(D). +6 (PSR, #23, Page 6)¶

4

**A Victim Related Adjustment:** None. **0** (PSR, #24, Page 6)

**Adjustment for Role in the Offense:** None. **0** (PSR, #25, Page 7)

**Adjustment for Obstruction of Justice:** None. **0** (PSR, #26, Page 7)

**Adjusted Offense Level (Subtotal):** 14. **14** (PSR, #27, Page 7)

**Chapter Four Enhancement:** None. **0** (PSR, #28, Page 7)

**Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG §3E1.1(a). **-2** (PSR, #29, Page 7)

**Total Offense Level:** 12. **12** (PSR, #30, Page 7)

**Offense Behavior Not Part of Relevant Conduct:**
None. (PSR, #31, Page 7)

Mr. GAYLE SIMPSON has no criminal history points which places him in criminal history category I. **(PSR at #36, Page 7)**

**Guideline Provisions:** Based upon a total offense level of 12 and a criminal history category of I, the guideline imprisonment range is 10 to 16 months. Since the applicable guideline range is in Zone C of the Sentencing Table, the minimum term may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment. USSG §5C1.1(d). **Supervised (PSR at #66, Page 12).** Mr. GAYLE SIMPSON now stands before this court for sentencing.

III.     Sentencing Recommendation by Probation

Guideline Sentence: 10-16 months

Supervised Release: 1-3 years

Fine: $5,500- $55,000

**Objection:**

IV.     Sentencing Recommendation by Government

Defendant has not yet received the Government's position papers.

V.     Sentencing Pursuant to 18 U.S.C. § 3553, et seq.

Core principles in sentencing have now been resolved by the Supreme Court in  United States v. Booker, 125 S. Ct. 738, (2005),  Gall v. United States,  128 S.Ct. 586, 591 (2007) and Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558 (2007.) )   "The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." Nelson v. United States, 129 S.Ct. 890, 891 (2009.)  Courts then are to consider the factors set forth in 18 U.S.C. § 3553(a.)  Booker also made it clear that the fact "[t]hat a factor is discouraged or forbidden under the advisory guidelines does not automatically make it irrelevant when a court is weighing the statutory factors apart from the guidelines." United States v. Smith, 445 F.3d 1, 5 (1st Cir. 2006.)   Moreover, factors justifying a sentence outside the guideline are no longer required to be "extraordinary."  Gall, 168 S.Ct. at 595 (emphasis added.)   "One theme" runs through the Supreme Court's recent sentencing decisions: " [United States v.] Booker[, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005),] empowered district courts, not appellate courts .... [and] breathe[d] life into the authority of district court judges to engage in individualized sentencing...." United States v. Whitehead, 532 F.3d 991, 993 (9th Cir. 2008)(internal citation omitted.)

In fashioning the appropriate sentence, this Court "may consider, without limitation, any information concerning the background, character, and conduct of the defendant, unless otherwise prohibited by law."  See 18 U.S.C. § 3661.   Under

6

this paradigm, this Court may freely consider any factor relevant to GAYLE SIMPSON background including, but not limited to, his childhood, his education, his close family ties, his employment history, his mental and emotional health, and his age, because these are factors that make up his "history and characteristics" 18 U.S.C. §3553(a)(1).

## VI. Application of the Statutory Sentencing Factors to This Case

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

> 1) "the nature and circumstances of the offense and the history and characteristics of the defendant"(§ 3553(a)(1));
>
> 2) "the kinds of sentences available" (§ 3553(a)(3));
>
> 3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§3553(a)(6));
>
> 4) "the need to provide restitution to any victims of the offense." (§3553(a)(7)).

a. The Nature and Circumstances of the Offense

On April 12, 2017, United States Customs and Border Protection intercepted a

7

package that contained wildlife that was addressed from the Philippines to "khayl Simpson" at 435 East 99th St. Inglewood, California 90301. The package contained a customs declaration form stating that the contents of the package were "speakers." United States Fish and Wildlife Service (USFWS) ultimately examined the package and found that it contained five monitor lizards hidden in socks within three speakers: three Spiny necked water monitor lizards (Varanus nuchalis), one Samar water monitor lizard (Varanus cumingi samersnis), and one Palawan water monitor lizard (Varanus palawanesis). Two of the monitor lizards arrived dead and a third had its foot crushed. All five monitor lizards were protected under the Convention on International Trade in Endangered Species of Wild Fauna and Flora (CITES), and can only be brought into the United States with an export or re-export certificate from the country of origin and a declaration filed with USFWS. **(PSR at #9, Page 4)**

Neither Simpson, nor the seller of the wildlife, had obtained or filed any of the required documents. Instead, Simpson ordered these animals from an overseas seller, knew that the animals were illegal to bring into the United States, and intended to smuggle them into the United States. He hid his role in the offense by using his son's name "khayl Simpson" on the package and by having the lizards inaccurately described as "speakers." **(PSR at #10, Page 5)**

On April 14, 2017, USFWS executed an anticipatory search warrant at Simpson's residence. During the search, agents found four Yellow headed water monitor lizards (Varanus cumingi) and two Spiny necked water monitor lizards (Varanus Nuchalis). **(PSR at #11, Page 5)**

The value in the United States of the monitor lizards from the seized package and those found at Simpson's address are calculated as follows: $2,000 for each of the five Varanus nuchalis; $1,200 for the Varanus cumingi samernsis, $4,000 for the Varanus palawanesis, and $2,500 for each of the four Varanus cumingi. In total, the value of the

1  wildlife from the package and those found during the search were $25,200. **(PSR at #12,**
2  **Page 5)**

3      The package identified above was not the first package that Simpson had ordered
4  from the Philippines. On April 8, 2016, April 20, 2016, June 2, 2016, July 13, 2016,
5  November 16, 2016, and December 14, 2016, Simpson ordered monitor lizards that were
6  inaccurately described as "speakers" on the package. He ordered each of these shipments
7  to be delivered to his fiancé's address (373 West 132 Street, Apartment 4, Hawthorne,
8  CA 90250). Simpson also ordered another shipment that Philippines law enforcement
9  intercepted on March 8, 2016, which contained two boxes with eight monitor lizards
10 (Varanus salvator) concealed in speakers and was being sent to "Kayle Simpson" in Long
11 Beach. The value of the monitor lizards from all of these other shipments exceeded
12 $15,000. **(PSR at #13, Page 5)**

13      VII.   Background

14      On September 27, 2017 Defendant GAYLE SIMPSON, age 33, pled guilty
15 to a single-count Information.   The Information alleges that on April 12, 2017,
16 Simpson violated 18 U.S.C. §§ 545, 2(b) by unlawfully importing into the United States
17 three Spiny necked water monitor lizards, one Samar water monitor lizard, and one
18 Palawan water monitor lizard. **(PSR, #2, Page 4)**

19      On August 14, 2017, GAYLE SIMPSON was arrested and released
20 $25,000 appearance bond without pretrial supervision.

21      SIMPSON has had no violations pending resolution of this matter.

22      This is Mr. Simpson's first encounter with the criminal justice system. He is
23 a true first offender who is not a threat to the community and who has little, if any,
24 risk of recidivism.   Mr. Simpson has freely admitted his guilt and he accepts
25 complete responsibility for this shameful criminal episode which, by all accounts,
26 appears to be an anomaly in an otherwise responsible and productive life.
27 b.      History and Characteristics of GAYLE SIMPSON.
28

Mr. Simpson was born on February 8, 1965, Los Angeles, California, to was born to the union of Gail Buford Simpson and Pilar Garcia. Simpson said his father was a bus driver who earned a good salary. However, he was also a gambling addict who lost money betting on horses at Hollywood Park. Simpson recalled one incident in which his father dropped the family off at a shelter and his mother promised never to forgive his father. After his parents separated, Simpson had little contact with his father who died about ten years ago. **(PSR, #41, Page 8)**

Simpson's mother was subsequently involved in a relationship with Theotus Williams, who died when Simpson was in the sixth grade. Thereafter, Simpson's mother raised her four sons alone while employed as a caregiver, and later as a cook, at both Los Angeles International Airport and assisted-living facilities. She is presently receiving worker's compensation and helping to care for Simpson's children. **(PSR, #42, Page 8)**

Simpson grew up in the Los Angeles area. His family struggled financially when he was young. When he was about 12 years old, Simpson began collecting all sorts of lizards and reptiles. He also played basketball as a child. **(PSR, #43, Page 8)**

Simpson has the following siblings: Alex Martinez, age 48, who lives in East Los Angeles and works for a pipe supply company; Salvador Martinez, age 37, who lives in Hawthorne, California, and works on oil rigs; Robert Simpson, age 28, who splits time living his mother in Inglewood or with a girlfriend. Robert also works on oil rigs.

45. Simpson has been a relationship with Karla Gentle (Gentle) for approximately 11 years. Gentle works as a medical biller. They have four children: Kabren Simpson, age 12; Khayl Simpson, at age 7; Lejace Gentle, age 14; and Syhnia West, age 11.

Simpson said his wife and children are all in good health. He spends most of his free time with his children, driving them to baseball and basketball practice and gymnastics. **(PSR, #45, Page 8-9)**

On October 14, 2017, the Probation Officer completed a presentence home inspection. Simpson, his wife, and their children live with Simpson's mother in a three-bedroom, single-family home situated in a working-class neighborhood. Simpson's mother purchased this home 18 years ago for $163,500. The residence was appropriately furnished and maintained. **(PSR, #46, Page 9)**

The Probation Officer also inspected the detached garage which had been completely converted to a reptile enclosure. What appeared to be professional-quality terrariums and enclosures for reptiles have been installed against all walls. Simpson reportedly spent $15,000-$20,000 on building the enclosures, which are now empty after the case agent seized Simpson's animals. **(PSR, #47, Page 9)**

On October 26, 2017, a Probation Officer assigned to the Location Monitoring Unit completed an assessment at Simpson's residence and determined that Simpson would be suitable for home detention. **(PSR, #48, Page 9)**

When interviewed by the Probation Officer, Simpson's mother stated that her son's love of animals began when he was a child. She said the opportunity to protect wild animals served as his motivation to enter the fire service as a teenager. Simpson's mother recalled a story her son told about how his team had prevented a bear cub from being injured in a fire. She noted that when her son was experiencing migraine headaches or otherwise having a bad day, he would spend time alone with his animals which would help him relax. Simpson's mother once overheard Simpson's wife say, "I wish he was as kind to me as he is to his lizards." **(PSR, #49, Page 9)**

**Mental and Emotional Health**

Simpson reports no history of medical or emotional problems. However, he is presently experiencing insomnia and anxiety stemming from his financial worries and concerns about the outcome of this case. **(PSR, #52, Page 9)**

**Educational, Vocational and Special Skills**

Simpson graduated from Crenshaw High School in 2002. **(PSR, #54, Page 9)**

**Financial Condition: Ability to Pay**

Information regarding Simpson's financial condition was verified using an asset search through the Accurint database.

## VIII.  PHYSICAL CONDITION-MEDICAL AND EMOTIONAL HEALTH

Mr. Simpson is 6'2" tall, weighs 250 pounds, and has brown eyes and black hair and is in good health.

Simpson is in good health apart from having migraine headaches, which he experiences three-to-four times a week. In 2015, he experienced an on-the-job back injury, but he is not in chronic pain. **(PSR, #51, Page 9)**

## IX.   SUBSTANCE ABUSE

The defendant has no history of alcohol or drug use.

## X.    EDUCATION, VOCATIONAL AND SPECIAL SKILLS

**Educational, Vocational and Special Skills**

Simpson graduated from Crenshaw High School in 2002. **(PSR, #54, Page 9)**

## XI.   EMPLOYMENT

**Employment Record**

For the past three months, Simpson has worked as an Uber driver. On a good day, he earns a net income of $130. **(PSR, #55, Page 9)**

From July 2012 to March 2016, Simpson was employed by Central Fishing Tool, an oil field equipment provider/servicer in Signal Hill, California. This company confirmed that Simpson was employed as a tool representative/serviceman, earning $60,000 per year plus a bonus. He was laid off due to a reduction in work. **(PSR, #56, Page 9)**

From 2006 to 2012, Simpson was employed by Nabors Well Services in Wilmington, California. He earned $29 per hour and left this position to work for Central Fishing Tool. **(PSR, #57, Page 9)**

From 2002 to 2006, Simpson was employed as a fire fighter by the California Department of Forestry and Fire Protection. He was initially stationed at the La Cima Fire Camp, a teaching and training facility in Julian, California. He later moved to the El Cariso fire station in Lake Elsinore, California. He earned approximately $60,000 annually (confirmed by his mother). **(PSR, #58, Page 9)**

## XII.   MILITARY SERVICE

The defendant has not been in the service.

## XIII.   FINANCIAL CONDITION: Ability to Pay

**Total Net Worth**   $0

| | |
|---|---|
| Monthly Income | $3160.00 |
| Less Expenses | $2332.00 |
| Total Monthly Cash Flow | $828.00 |

13

Ability to Pay

Based on the defendant's financial condition, a minimal fine is recommended. **(PSR at #63, Page 14)**

With respect to employment history and family ties, courts have recognized that defendants like Mr. Simpson, who has a deep commitment to family and who were steadily employed prior to the commission of an offense also were less likely to re-offend.   United States v. Thompson, 74  F. Supp. 2d. 69, 79 (D. Mass. 1999)(strong and steady employment record and sustained commitment to family merited departure to sixty months)(reversed on other grounds.)   Studies have also shown that those with stable employment in the year prior to their instant offense are less likely to recidivate (19.6%) than are those who are unemployed (32.4%) See Measuring Recidivism: The Criminal History Computation Of the Federal Sentencing Guidelines (2004) at page 12. [1] GAYLE SIMPSON has very strong family ties and is very much involved with his large and extended family that both live in California and Kansas. Gayle has been employed for many years and he has a strong work ethic.   Together, these factors make him less likely to re-offend.   Thompson, supra.

iii.    The Disproportionate  Effect of Enhancement

This Court may consider the cumulative and disproportionate effect of the application of permissible but overlapping enhancements to justify a lower sentence.  United States v. Jackson, 346 F.3d 22, 26 (2d Cir. 2003)


XIV.  Age and Criminal History

**True First Offender**

GAYLE SIMPSON is 33 years of age and this is his very first  encounter with the criminal justice system.   It is  recognized that the length of time a

[1]  Available at http://www.ussc.gov/publicat/Recidivism_General.pdf

defendant refrains from committing his first crime is a factor in mitigation. United States v. Ward, 814 F.Supp. 23, 24. (E.D. Va. 1993).  See United States Sentencing Commission, Recidivism and the First Offender 13-14 (May 2004) (noting that the rate of recidivism for a true first offender is 11.7%, much lower than the 22.6% rate for offenders with 1 criminal history point and 36.5% rate for offenders with 2 or more points)

**Age Relative to Recidivism**

It is also recognized that recidivism rates decline with age.  United States v. Seljan, 497 F.3d 1035, 1047 (9th Cir. 2007) (finding a sentence to be reasonable because, among other considerations, the district court acknowledged that the defendant's advanced age reduced the likelihood of recidivism.); United States v. Simon, 361 F. Supp. 2d 35, 48 (E.D. N.Y. 2005)("The Guidelines' failure to account for this phenomenon renders it an imperfect measure of how well a sentence protects the public from further crimes of the defendant.")

Post-Booker, a sentencing court may consider a defendants' age under §3553(a).  United States v. Carter, 538 F.3d 784 (7th Cir. 2008)(affirming 24-month sentence for money laundering where advisory guideline range  was 87-108 months based partly on finding that defendant, at age 61, posed a lower recidivism risk.)    The Sentencing Commission also has found that "recidivism rates decline relatively consistently as age increases." See U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines (2004.) [2]    The Sentencing Commission found that "[a]mong all offenders under age 21, the recidivism rate is 35.5 percent, while offenders over age 50 have a recidivism rate of 9.5 percent." See Measuring Recidivism: The Criminal History Computation Of the Federal

---

[2]  http://www.ussc.gov/publicat/Recidivism_General.pdf

Sentencing Guidelines (2004) at page 12. [3]

Gayle committed this offense at the age of 33. Gayle is a true "first offender" as he was crime-free until now. He is also therefore less likely to re-offend. Mr. Simpson presents zero recidivism risk of all categories and types of offenders which makes him an excellent candidate for a non-incarcerative sentence. Given these factors, a sentence of straight probation will "be equally efficient as and less costly than incarceration." U.S.S.G. §5H1.1 (emphasis added.)

**Lack of Sophistication**

In United States v. Jagmohan, 909 F.2d 61, 65 (2nd Cir. 1990) the Second Circuit upheld a downward departure on the basis of the defendant's employment history and the fact that the fact that defendant used a personal check to commit the bribery offense for which he was convicted. The Second Circuit observed:

> The district court gave special emphasis to the fact that appellee used a personal check in the bribery transaction. This, in the district court's view, reflected an utter lack on appellee's part of the sophistication usually shown by persons bribing an official. Thus, the picture painted of appellee is one of a person with an entirely stable background, indicated by his employment history, and whose unusually un-surreptitious conduct in undertaking the bribery constituted a mitigating factor "of a kind, or to a degree" not adequately considered by the Guidelines. 909 F.2d at 65.

**Isolated Mistake / Aberrant Conduct**

---

[3] Available at http://www.ussc.gov/publicat/Recidivism_General.pdf

In United States v. Guerrero, 333 F.3d 1078, 1082 (9th Cir. 2003) the Ninth Circuit discussed the correct application of the aberrant conduct guideline and held that before applying the guideline, the sentencing court must make a threshold finding that the case is "extraordinary" and then determine whether the conduct is "aberrant" as defined in the guidelines, that is, whether it was (1) committed without significant planning; (2) was of limited duration; and (3) that it represented a marked deviation by the defendant from an otherwise law-abiding life.

In  United States v. Howe, 543 F.3d 128, 133 (3d Cir. 2008), the Third Circuit found no error in sentencing where the district court characterized a series of criminal acts as an "isolated mistake" in the context of the defendant's otherwise honorable and law abiding life prior to committing those crimes.

Post-Booker, factors justifying a sentence outside the guideline are no longer required to be "extraordinary."  Gall, 168 S.Ct. at 595 (emphasis added.) Nonetheless, the record here reflects that this incident is undeniably a marked deviation from Mr. Simpson' prior law abiding life.  Merriam-Webster's on-line dictionary defines "extraordinary" as 1 a: "going beyond what is usual, regular, or customary. . ." [4]

Friends and family uniformly describe a man who is held in high regard as a father, husband, friend, and companion.  He is generous with his time and expertise and he is always willing to help others.  He has many friends and is close with his family because of his trusting personality, his good will and his positive outlook. He currently resides with his wife and four children, ages seven to 14. Mr. Simpson's wife Karla works full time and Mr. Simpson works as an Uber Driver and takes care of their 4 children. They are dependent on him for driving the kids to school, activities, and helping with homework.

---

[4]  http://www.merriam-webster.com/dictionary/extraordinary

In stark contrast, this first-time and highly aberrant criminal conduct was a marked deviation from what was clearly an otherwise honorable and law abiding life. When viewed in light of his entire life, this single, ill-considered incident is clearly extraordinary in that it deviated from what was "usual, regular or customary" in Mr. Gayle Simpson.  Further, there was minimal planning necessary only to commit the crime and the offense conduct was of short duration.  Because Mr. Simpson' anomalistic criminal conduct "reasonably could constitute an isolated mistake" it is deserving of mitigation. Guerrero, supra; Howe, supra.

c.      Seriousness of the Offense, Respect for the Law, and Just Punishment

Under 18 U.S.C. § 3553(a)(2)(A) the sentence imposed must adequately "reflect the seriousness of the offense, ... promote respect for the law, [or] provide just punishment for the offense."

In United States v. Gall, the United States Supreme Court found a probationary sentence to be reasonable  in light of the application of the §3553 factors.  In upholding the probationary sentence, the Court acknowledged that:

> [...] custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.
>
> [...] Probationers may not leave  the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most

18

probationers are also subject to individual "special conditions" imposed by the court. 128 S.Ct. at 595-596 (internal citations omitted); accord United States v. Lehmann, 513 F.3d 805, 809 (8th Cir. 2008) ( standard conditions of probation constitute a "substantial restriction of liberty".) Gall and Lehmann found the significant restriction on liberty imposed by the standard and specific conditions of probation to be adequate punishment.  The consequences for failing to comply with the terms and conditions of probation can be severe.

**General and Specific Deterrence**

Section 3553(a)(2)(B) requires this court to consider whether the sentence imposed "afford[s] adequate deterrence to criminal conduct[.]"

In reviewing the reasonableness of a sentence of probation, the Ninth Circuit very recently held:

> *We cannot find as a matter of law, however, that the failure to impose a sentence that includes a period of incarceration is a violation of § 3553(a) or inconsistent with the Sentencing Reform Act. We find no support for such a rule. Section 3553(a), for instance, does not require the goal of general deterrence be met through a period of incarceration.*
> *This is not meant to imply that the Committee considers a sentence of imprisonment to be the only form of sentence that may effectively carry deterrent or punitive weight. It may very often be that release on probation under conditions designed to fit the particular situation will adequately satisfy any appropriate deterrent or punitive purpose United States v. Edwards, 595 F.3d 1004, 1016, 1016, 1017 n. 9 (9th Cir. 2010) (emphasis added.)*

Here, a sentence of two years of straight probation with GPS monitor will be sufficient to deter and to punish.

**The Need to Protect the Public**

The sentence imposed must also "protect the public from further crimes of the defendant."18 U.S.C. § 3553(a)(2)(C.)

Gall aptly observed that the standard conditions of probation imposed upon defendants  "substantially restrict their liberty."  Gall, supra, 128 S.Ct. at 595.  "With appropriate conditions, probation empowers the court to ensure rehabilitation, full restitution to victims, payment of fines, protection of the public, and compliance with the law. If the defendant falters or fails to comply, the violation of probation gives the judge power to mete out greater punishment, including incarceration. As the majority notes, "Probation is not leniency."  United States v. Bragg, 582 F.3d 965, 973 (9th Cir. 2009)( N. Randy Smith, Circuit Judge, dissenting.)

This Court should also consider the fact that Mr. Simpson has known that he would be charged since 2017 and did not flee or otherwise obstruct the investigation into this matter.  And, having learned a painful lesson about the criminal consequences of exercising self-help. Mr. Simpson is not a danger to the community.

**The Kinds of Sentences Available**

When sentencing, this Court must consider "the kinds of sentences available" 18 U.S.C. § 3553(a)(3.)

On September 27, 2017, Gayle Simpson (Simpson) pled guilty to a single-count Information in which he is solely named. (PSR Page 4 Paragraph 1)

The Information alleges that on April 12, 2017, Simpson violated 18 U.S.C. §§ 545, 2(b) by unlawfully importing into the United States three Spiny necked water monitor lizards, one Samar water monitor lizard, and one Palawan water monitor lizard. (PSR Page 4 Paragraph 2)

20

**Custody**

    **Statutory Provisions:** The maximum term of imprisonment is 20 years. 18 U.S.C. § 545. (PSR Page 12 Paragraph 65)

    **Guideline Provisions:** Based upon a total offense level of 12 and a criminal history category of I, the guideline imprisonment range is 10 to 16 months. Since the applicable guideline range is in Zone C of the Sentencing Table, the minimum term may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment. USSG §5C1.1(d). (PSR Page 12 Paragraph 66)

    **Supervised Release**

    **Statutory Provisions:** The Court may impose a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2). (PSR Page 12 Paragraph 67)

    **Guideline Provisions:** Since the offense is a Class C Felony, the guideline range for a term of supervised release is 1 to 3 years. USSG §5D1.2(a)(2). (PSR Page 12 Paragraph 68)

**Probation**

**Statutory Provisions:** The defendant is eligible for not less than one nor more than five years probation because the offense is a Class C Felony. 18 U.S.C. § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. (PSR Page 12 Paragraph 69)

**Guideline Provisions:** Since the applicable guideline range is in Zone C of the Sentencing Table, the defendant is ineligible for probation. USSG §5B1.1, comment.(n.2). (PSR Page 12 Paragraph 70)

**Fines**

**Statutory Provisions:** The maximum fine is $250,000. 18 U.S.C. § 3571(b). (PSR Page 13 Paragraph 71)

A special assessment of $100 is mandatory. 18 U.S.C. § 3013. (PSR Page 13 Paragraph 72)

**Guideline Provisions:** The fine range for this offense is from $5,500 to $55,000. USSG §5E1.2(c)(3). (PSR Page 13 Paragraph 73)

## Restitution

Restitution is not applicable in this case 18 U.S.C. § 3663.

## XV.

## THE STATUTORY SENTENCING FACTORS IN 18 U.S.C. U.S.C.§3553(a) REQUIRE A SENTENCE BELOW THE GUIDELINES RANGE

Core principles in sentencing have now been resolved by the Supreme

Court in *United States v. Booker,* 125 S. Ct. 738, (2005)*, Gall v. United States*, 128 S.Ct. 586, 591(2007) and *Kimbrough v. United States*, *552 U.S. 85, 128 S.Ct. 558(2007.)*

> The Guidelines are not only mandatory on sentencing courts;
> they are also not to be presumed reasonable.
> -*Nelson v. United States, 129 S.Ct. 890,891 (2009).*

What the Supreme Court has described as the "overarching provision" of 18 U.S.C. § 3553(a) is set forth in that provision's very first sentence – that "the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in subparagraph (2) of this subsection." *Kimbrough v. United States*, *128 S. Ct. at 570 (2007).* This description by the Supreme Court makes clear that this "parsimony principle" is not mere precatory language, but is a key – in fact, *the* key – requirement that a sentence must satisfy. Thus, factors justifying a sentence outside the guideline *are no longer required to be "extraordinary." Gall, 168 S.Ct. at 595.*

> Congress could not have been clearer in directing that no
> limitation ... be placed on the information concerning the
> background, character, and conduct of a defendant that a
> district court may receive and consider for the purpose of
> imposing an appropriate sentence…Permitting sentencing
> courts to consider the widest possible breadth of information
> about a defendant "ensures that the punishment will suit
> not merely the offense but the individual defendant."
> -*Pepper, 131 S.Ct at 1240.*

Thus, the challenge in this case is to determine a fair sentence that is sufficient, but not greater than necessary. A sentence that is too severe is

unjust, and therefore, also fails to promote respect for and confidence in the law. As it pertains to Mr. Simpson, the sentence which is sufficient, but not greater than necessary, is far less than the guideline range of 48 months the probation office has calculated.

## THE PURPOSES OF SENTENCING *(18 U.S.C. § 3553(a)(2))*

## The Seriousness of the Offense and Promoting Respect for the Law, and Just Punishment *(18 U.S.C. § 3553(a)(2)(A))*.

Promoting respect for the law means more than merely doling out harsh punishment. As noted by the Supreme Court in *Gall v. United States*, *128 S. Ct at 599*, an overly harsh sentence "may work to promote not respect, but derision of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing."

And as explained by the Third Circuit with respect to sentencing criminal defendants:

> The hideous nature of an offender's conduct must not drive us to forget that it is not *severe* punishment that promotes respect for the law, it is *appropriate* punishment. Although there are clearly times when anything less than severe punishment undermines respect for the law, it is just as certain that unduly severe punishment can negatively affect the public's attitude toward the law and toward the criminal justice system. It is no doubt

24

partly for that reason that jurists have referred to the responsibility of

sentencing as "daunting." The power and responsibility of a sentencing court

is, indeed, nothing short of "daunting." It requires a careful balancing of

societal and individual needs, and an ability to determine a sentence based on

dispassionate analysis of those often competing concerns.

-*United States v. Olhovsky*, 562 F.3d 530, 551-52 (3rd Cir. 2009)

## **Deterrence (*18 U.S.C. § 3553(a)(2)(B)*)**

There are two types of deterrence for the Court to consider – general

deterrence, i.e., deterrence of others, and specific deterrence, i.e., deterrence of

Mr. Simpson.  As to general deterrence it must be noted that scientific studies

regarding deterrence suggest that it is the *fact* of a sentence, not its length,

that has a deterrent impact. [5]

This would seem particularly true in the case of first time offenders,

like Mr. Simpson, who has never been to prison before,

and who feel punished not just by incarceration but also by the social

embarrassment, the ongoing label resulting from being a convicted felon, and

the continuing intrusion into their lives created by the supervised release which

follows any term of imprisonment.

As to specific deterrence, the Court can be very sure that Mr. SIMPSON

---

[5] Kleck, et al., *The Missing Link in General Deterrence Theory, 43* Criminology 623, 653 (2005)

25

has learned a lesson and will never do anything like this again. The impact of

his offense behavior will shadow him for his remaining adult working years.

shadow him for his remaining adult working years.

## **The Need to Protect Society (*18 U.S.C. § 3553(a)(2)(B)*)**

One initial factor to consider in evaluating the need to protect society, in

this particular case, is that first time offenders generally have a low risk of

recidivism. This lack of criminal history is significantly relative to recidivism.

The Sentencing Commission has stated as follows in this regard:

> The analysis [of empirical data on re-offending] delineates
>
> recidivism risk for offenders with minimal prior criminal history
>
> and shows that the risk is lowest for offenders with the least
>
> experience in the criminal justice system..
>
> *U.S.S.C.,"Recidivism And The First Time Offender,"*(May 2004).

-        The sentence imposed must also "protect the public from further

crimes of the defendant"18 U.S.C. § 3553(a)(2)(c) *Gall* aptly observed that the

standard conditions of probation imposed upon defendants "substantially

restrict their liberty". With appropriate conditions, probation empowers the

court to ensure rehabilitation, full restitution to victims, payment of fines,

protection of the public, and compliance with the law. If the defendant fails

to comply, the violation of probation gives the judge power to mete out greater

punishment, including incarceration. As noted, "Probation is not leniency."

*United States v. Bragg*, 582 *F.3d 965, 973 (9th Cir. 2009).*

### The Most Effective Sentence

A sentence of two years probation with home confinement. Under these circumstances, two years of home confinement, is the most effective means.

### The Need For The Sentence Imposed

"Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances. That is the historic role of sentencing judges, and it may continue to be exercised, subject to the reviewing court's ultimate authority to reject any sentence that exceeds the bounds of reasonableness." United States v. Jones, 460 F.3d 191, 195 (2d Cir. 2006.)

"In order for the Guidelines regime to be truly advisory, a district court must be potentially able, when the proper situation arises, to sentence a defendant outside the Guidelines range but within the statutory range. Any other conclusion would alter the statutory sentencing scheme enacted by Congress and interpreted by Booker." United States v. Tomko, 562 F.3d 558, 574-575 (3rd Cir. 2009)(affirming sentence of probation from 18-24 month advisory guideline range.)

"It has been uniform and constant in the federal judicial tradition for the

sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113, 116 S.Ct. 2035 (1996.) GAYLE SIMPSON is one of those "unique stud[ies] in human failings" and he will live with the consequences of this conviction for the remainder of his life.

GAYLE SIMPSON made a huge mistake when he took the law into his own hands and he is holding himself accountable. He is remorseful and he is ashamed. This was an inexplicable lapse of judgment committed by an otherwise "law abiding citizen" who did an "incredibly dumb thing." United States v. Hadash, 408 F.3d 1080, 1084 (8th Cir. 2005). A sentence of two years of probation, with home confinement, be a " fair and just sentence under all the circumstances" of this case.

**XVI.      Conclusion**

Under all of the circumstances of this case, a sentence of two years probation, with home confinement, no prison and no restitution, would be sufficient but not greater than necessary to meet the goals of sentencing. See 18 U.S.C. §§ 3553(a)(2)(B). On October 26, 2017, a Probation Officer assigned to the Location Monitoring Unit completed an assessment at

Simpson's residence and determined that Simpson would be suitable for home detention. **(PSR, #48, Page 9)**

DATED: 2/14/18          RESPECTFULLY SUBMITTED

_____/s/_____
STEPHEN R. KAHN
ATTORNEY FOR DEFENDANT
GAYLE SIMPSON

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am over the age of eighteen and not a party to the within action; my business address is 433 North Camden Drive, Suite 888, Beverly Hills, California, 90210.

On February 15th, I served the following document described DEFENDANT'S POSITION PAPER RE SENTENCING on all parties appearing in this action by placing a true copy thereof, enclosed in a sealed envelope addressed as follows:

Erik M. Silber
Assistant United States Attorney
312 N. Spring St. 12 floor
Los Angeles, CA. 90012

Gregory P. Kirk
United States Probation Officer
21041 Burbank Blvd # 200,
Woodland Hills, CA.

( X  )      (BY MAIL)  I caused such envelope fully prepaid postage thereon to be placed in the United States Mail at Beverly Hills, California.

This Proof of Service is executed on the 15th day of February, 2018, at Beverly Hills, California.

( X  )      (FEDERAL)   I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_____/s/_____

Claudia Hirsch, Declarant

-